UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH YOHN,

                        Plaintiff,                        No. 08-CV-10008-DT

vs.                                            Hon. Gerald E. Rosen

MARY SUE COLEMAN; TERESA A.
SULLIVAN; PETER J. POLVERINI;
PAUL H. KREBSBACH; MICHAEL M.
BERNITSAS; individually and in
their respective capacities,

                        Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      March 16, 2009

PRESENT:   Honorable Gerald E. Rosen
                  United States District Judge

I. <u>INTRODUCTION</u>

Plaintiff Keith Yohn, proceeding *pro se,* commenced this case on January 2, 2008,

in this Court, suing Defendants Mary Sue Coleman, Teresa A. Sullivan, Peter J. Polverini,

Paul H. Krebsbach, and Michael M. Bernitsas, under 42 U.S.C. § 1983, on various

theories of federal constitutional and state law, arising out of events at the University of

Michigan School of Dentistry.  Yohn claims that the Defendants, all administrators at the

university, threatened to abridge his First Amendment right to free speech and later

retaliated against him for writing articles and emails about academic standards at the

dental school.  He also alleges that the subsequent faculty grievance proceeding, which

addressed, *inter alia,* these free speech claims, was tainted by the appointment to the

panel of a biased faculty member and that the Defendants failed to intervene or correct

this shortcoming.  Yohn brings this Section 1983 suit against the Defendants in their

individual capacities, seeking injunctive relief, as well as compensatory and punitive

damages.

The case is presently before the court on Defendants' Motion for Judgment on the

Pleadings and/or Summary Judgment, and Yohn's Motion for Judgment on the Pleadings.

The Defendants contend that they are entitled to judgment as a matter of law, insofar as

Yohn's free speech was not infringed and he has not been deprived of constitutionally

protected interests for purposes of sustaining a due process claim.  They argue, in

addition, that, as state university employees, they are entitled to qualified immunity.

Having reviewed the parties' respective briefs in support of and opposition to both

motions, as well as the record as a whole, the Court finds that the relevant allegations,

facts, and legal arguments are adequately presented in these written submissions, and that

oral argument would not aid the decisional process.  Accordingly, the Court will decide

Defendants' motion "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court,

Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on

these motions.

II.  FACTS

2

Plaintiff Yohn is a tenured Associate Professor at the University of Michigan School of Dentistry.  Since 1999, Yohn has litigated various claims against the Board of Regents and the University of Michigan administration in state and federal courts.  His lawsuits, as well as three articles published in the *University Record*, and more than 25 emails sent to the dental school faculty, generally relate to what he considers to be the lowering of academic standards for minority dental students and the Board of Regents' authority over grading, promotion and graduation of students.

In October 1999, Yohn acted as one of four panel members scoring the examination for a special remediation course that the dental school offered to two students who had previously failed a class.  The panel failed both students, giving them a letter grade of "F" on the practical exam.  Due to administration concerns regarding the confidentiality of the grading procedure and structure of the remediation course, dental school administrators abandoned the course and the "F" grades, and a "W" was entered on the students' transcripts.  The students were ultimately permitted to graduate.  Yohn's subsequent dispute with the university and his public commentary in the form of articles and email messages stem primarily from this incident.

In the period pertaining to this case, Yohn's ongoing email messages to dental school faculty members met with apparently angry or irritated responses from colleagues. For example, on August 6, 2005, Yohn sent another in a series of emails describing various aspects of his then-pending lawsuit and expressing his concerns over the 1999 incident's impact on teacher integrity.  In a subsequent message to the faculty four days

3

later, Yohn responded to apparent criticisms he had received following that August 6

message:

> If you do not want to read my "garbled" e-mail messages, then you know
> where the delete key is. . . . Trying to intimidate me will only make me fight
> harder in Court.  I have a right under the First Amendment of the U.S.
> Constitution to "Speak" and "Express" myself in any form, content, or
> context I wish.

(Compl. Ex. 4.)  In another email to the staff, Yohn apparently referred to emails he had

received from other faculty members:

> I have a right to file a lawsuit and bring out the facts and truth in a matter
> and right a wrong.  Please stop talking behind my back.  If you have
> something to say to me, then at least have the "Guts" to say it to my face. . .
> .  I hope this e-mail message is not "garbled," "grammatically incorrect,"
> "bashing," "recidivist fibber," or "fabulist."  This is supposed to be a
> professional school.  I am sorry to say that some of you act like adult
> children.  GROW UP AND FACE THE TRUTH !!!  Please seek advice
> from the Office of the General Counsel.

(Compl. Ex. 5.)

On August 17, 2005, Yohn met with the chairman of his university department,

Paul H. Krebsbach, at Krebsbach's request.  At the meeting, convened in part to respond

to these growing tensions, Krebsbach allegedly said to Yohn: "Some people don't care

shit about your lawsuit.  I want to proof read your email messages before you send them

out."  (Compl. ¶ 70.)  In his affidavit, Krebsbach described the meeting otherwise, stating

that he suggested three alternatives to sending all-faculty emails: "(1) dealing with faculty

members individually; (2) discussing matters of contention first with Krebsbach so that he

may assist in resolving disagreements; or (3) using the dental school grievance process."

4

(Krebsbach Aff. 8, Feb. 27, 2008.)  Nearly two weeks after the meeting with Krebsbach, on August 30, 2005, Yohn sent another email to the dental school faculty, describing his own account of the meeting and indicating that he felt his First Amendment rights had been infringed.

On November 7, 2005, Yohn sent a letter to Krebsbach requesting an equity adjustment in his base salary, and detailing reasons the request should be granted.  These included Yohn's long career with the school, strong student evaluations and positive letters from patients.  In a letter sent November 22, 2005, Krebsbach denied Yohn's request for an equity adjustment.  Although the letter did not specify the grounds for the denial, Krebsbach later provided a written rationale, in compliance with a School of Dentistry grievance review board recommendation, as well as, at Yohn's request, a chart showing comparable raise data for faculty with the same title and rank as Yohn.[1] Krebsbach explained that in comparison with other dental school faculty members, Yohn's service and scholarship were below expectations.  Yohn received a 1.5 % merit increase for 2005–06, as compared to a 1.53 % average increase overall for faculty.

---

[1] Yohn contests the validity of the chart provided by Krebsbach, arguing that it is misleading.  Yohn moved on June 2, 2008 to strike the chart from the court record because it included data comparing "Associate Professors with tenured university appointments," and did not take into account Yohn's articles in the *University Record* and his work in the dental school clinic.  He later withdrew this motion, and, on August 25, 2008, entered charges of attorney misconduct against the Defendants' attorneys for submitting the chart.  He alleged that the inclusion of Krebsbach's affidavit and the disputed chart "breached the Public's Trust [sic] and the *integrity* of the legal system." (Pl. Charges of Attorney Misconduct 1.)

On January 15, 2006, Yohn filed a faculty grievance application form charging the dean of the School of Dentistry, Peter Polverini, and Krebsbach with violation of Yohn's right to free speech, as well as retaliation for using the university's email server to exercise that right.[2]  The dental school faculty grievance procedure requires that each party, the grievant and the respondent, select five potential grievance review board (hereinafter "GRB") members from a list of potential panel members.  Within ten days of receipt of the other's slate of nominees, each party must select one of the other party's nominees plus two ranked alternates.

On January 19, 2006, Yohn submitted his list of five nominees to Polverini, in accordance with the GRB procedures.  Similarly, Polverini submitted a list of nominees. Ultimately, Yohn selected David Kohn, Professor of Dentistry, from Polverini's proposed list.  Michael M. Bernitsas, Professor of Naval Architecture and Marine Engineering, was selected to chair the GRB, while Lynn Johnson, Associate Professor of Dentistry, was named the third panel member.

On April 16, 2006, six weeks before the scheduled GRB hearing date, Yohn learned that Kohn had received raises of approximately $25,000 and $13,000, in 2004 and 2005 respectively, while under the supervision of Polverini and Krebsbach.  Yohn sent a letter to Bernitsas the following day, requesting that Kohn be removed from the GRB. Bernitsas did not respond to the letter and Kohn remained on the panel.  On May 30,

---

[2]  The grievance form also charged another professor with "intimidation," in the context of a related incident, but that respondent is not party to this lawsuit.

2006, the GRB met to hear Yohn's grievance.  Polverini presented the case for the respondents and testimony was taken from Krebsbach.  Yohn presented his own case.

While the GRB was preparing its recommendation in August 2006, Yohn sought the intervention of first Mary Sue Coleman, University of Michigan President, and then Teresa Sullivan, Provost and Executive Vice President of Academic Affairs.  In letters to each, Yohn asked that they act to remove Kohn from the panel.  Both declined to intervene in the ongoing GRB proceedings and encouraged Yohn to exhaust the remedies available through the faculty grievance process.

On September 13, 2006, the GRB issued its final recommendation.  The GRB recognized Yohn's right to publicly discuss academic issues as protected by the First Amendment, but concluded that in the August 17, 2005 meeting, it was not Krebsbach's intent to censor Yohn or otherwise infringe Yohn's right to free speech.  Rather, the GRB found that Krebsbach, in good faith, had merely sought to prevent defamatory statements based on unproven allegations from being broadcast to all faculty via email.  The GRB also concluded that the allegation of economic retaliation by Polverini and Krebsbach was without merit.  Pursuant to the School of Dentistry Appeal Procedure, on September 20, 2006, the Executive Committee of the School of Dentistry unanimously recommended that Polverini accept the GRB's recommendations.  Polverini concurred with the recommendation.

On January 2, 2008, Yohn filed the instant action.  In his ten-count Complaint, Plaintiff asserted Section 1983 claims against Coleman, Sullivan, Polverini, Krebsbach

7

and Bernitsas, alleging deprivation of a neutral and impartial grievance review board to redress grievances, in violation of Yohn's Fifth and Fourteenth Amendment right to due process of law (Counts I-IV). He also alleged threatened censorship and retaliatory denial of an equity adjustment in his base salary, in violation of his First Amendment right to free speech (Count V). Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's due process claims, because Yohn has not been deprived of a constitutionally protected interest. They further argue that Plaintiff's free speech was not infringed. Finally, as government employees, the Defendants claim a defense of qualified immunity.

### III.   DISCUSSION

### A.   APPLICABLE STANDARDS

A motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), is evaluated under the same standards for dismissal as a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted. Rule 12(b)(6) allows the court to determine the legal sufficiency of a plaintiff's claims. See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Courts considering a Rule 12(b)(6) motion must accept the well-pled factual allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. See Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). However, the court is not required to accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. Blackburn v. Fisk University, 443 F.2d 121, 123 (6th Cir. 1971). Accordingly, a court must determine "whether the plaintiff

undoubtedly can prove no set of facts in support of his claims that would entitle him to relief" under a viable legal theory advanced in the complaint. Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1041 (1996).

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. Sanders v. Freeman, 221 F.3d 846, 851 (6th Cir. 2000).

Three 1986 Supreme Court cases—Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[3] According to the Celotex Court,

In our view, the plain language of Rule 56(c) mandates the entry of summary

---

[3] "[T]aken together these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials. . . ." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure 3d, § 2727.

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent  must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

Betkerur v. Aultman Hospital Association, 78 F.3d 1079, 1087 (6th Cir. 1996). See also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the foregoing standards in deciding Plaintiff's Motion for Judgment on the Pleadings and Defendants' Motion for Judgment on the Pleadings and/or Summary Judgment in this case.

10

B.     PLAINTIFF HAS FAILED TO MAKE OUT A LEGALLY COGNIZABLE
       FIRST AMENDMENT CLAIM

Yohn alleges that Krebsbach "maliciously intended to censor" Yohn's e-mail messages to the faculty, and that, three months later, Krebsbach denied Yohn an equity adjustment of his base salary without giving an explanation, in retaliation for Yohn's criticism of the administration.  (Compl. ¶ 74.)  He claims a First Amendment right to speak out on the lowering of academic standards.  He also claims that his First Amendment right to petition the government was infringed.

To establish a cognizable First Amendment retaliation claim, Yohn must demonstrate: (1) that he was engaged in a constitutionally protected activity; (2) that the defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights.  Nair v. Oakland County Comm. Mental Health Auth., 443 F.3d 469, 478 (6th Cir. 2006);  Gragg v. Ky. Cabinet for Workforce Dev., 289 F.3d 958, 965 (6th Cir. 2002) (citing Vaughn v. Lawrenceburg Power Sys., 269 F.3d 703, 705 (6th Cir. 2001)).

For the first prong of the test, the Court determines whether the relevant speech addressed a matter of public concern, such that it can be considered constitutionally protected activity.  See Connick v. Myers, 461 U.S. 138, 143, 103 S. Ct. 1684 (1983).  If the answer is yes, then the Court must balance the interests of the public employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an

11

employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Ed. of Township High School Dist. 205, 391 U.S. 563, 568, 88 S. Ct. 1731 (1968). Whether the speech at issue involves a matter of public concern is a question of law for the court. Bonnell v. Lorenzo, 241 F.3d 800, 809-10 (6th Cir.), cert. denied, 534 U.S. 951, 122 S. Ct. 347 (2001).

The Petition Clause of the First Amendment forbids Congress from "abridging the . . . right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. For petitioning public employees, the courts apply the same analysis to cases arising under the Petition Clause as that applied to cases arising under the Speech Clause. Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1226 (6th Cir. 1997); see also Thaddeus-X v. Blatter, 175 F.3d 378, 390 n. 6 (6th Cir. 1999) (citing cases from various federal circuits); but see Jenkins v. Rock Hill Local Sch. Dist., 513 F.3d 580, 587 (6th Cir. 2008) (holding that the public concern test is not applicable to petitioning activity outside the public employee context); Gable v. Lewis, 201 F.3d 769, 771 (6th Cir. 2000) (holding that Petition Clause should only be limited to matters of "public concern" where it is necessary to maintain order and avoid disruption in a governmental workplace). Thus, in a right-to-petition case under the First Amendment case law of this circuit, just as for a freedom of speech retaliation case, the Court must evaluate "whether the plaintiff's conduct deserves constitutional protection." Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir. 1983).

     1.     PLAINTIFF WAS SPEAKING ON MATTERS OF PUBLIC

CONCERN

The Court begins by evaluating whether Yohn's emails and articles addressed matters of public concern.  Speech touches on a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community."  Connick, 461 U.S. at 146.  The Sixth Circuit has held that a teacher commenting on curricular and pedagogical decisions is engaging in protected activity under the First Amendment.  See Evans-Marshall v. Board of Educ. of Tipp City Exempted Village School, 428 F.3d 223, 230 (6th Cir. 2005).  The Circuit has also held that professors commenting on administrative decisions regarding university resources, see Jackson v. Leighton, 168 F.3d 903, 910 (6th Cir. 1999), or internal handling of sexual harassment claims, see Bonnell, 241 F.3d at 811 (6th Cir. 2001), are also engaging in constitutionally protected activity.  By contrast, personnel disputes or other purely personal concerns are not protected by the First Amendment, see Connick, 461 U.S. at 148, 103 S.Ct. at 1690; Farhat v. Jopke, 370 F.3d 580, 593 (6th Cir. 2004), but mixed questions of private and public concern can be protected.  Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 895 (6th Cir. 2003).

In Farhat, the court summarized the following principles for determining whether speech is of public concern, after a close review of the Supreme Court Connick decision and its progeny in the Sixth Circuit:

1.     Speech is of "public concern" if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their

13

government.

2.      The fact that the public employee engages in the speech while in the course of his or her employment does not preclude a finding that the speech touches upon a matter of public concern.

3.      The employee's motive for engaging in the speech in question is a relevant, but not dispositive, factor when considering whether an employee's expression is of public concern.

4.      Although First Amendment protection might not be available if the employer can show that the public employee knowingly or recklessly made false statements, a public employee is not required to prove the truth of his or her speech in order to secure the protections of the First Amendment.

Farhat, 370 F.3d at 590–91.

Undoubtedly, academic standards for dental students earning graduate diplomas and entering the dental profession is an issue of significant public concern.  Just as the Third Circuit concluded that a tenured professor's letters and public discussion of academic standards touched on matters of public concern in Johnson v. Lincoln Univ. of Com., 776 F.2d 443, 447 (3rd Cir. 1985), so too, this Court finds that Yohn's statements about the administration's role in grade inflation and academic policy touched on issues "about which information is needed or appropriate to enable the members of society to make informed decisions about" a public university.  Farhat, 370 F.3d at 591.  Although Yohn's emails also discussed internal disputes over the proper use of university email servers and administration handling of faculty disagreements, his communications can be considered mixed questions of private and public concern sufficiently focused on underlying questions of public concern.

14

2.      PLAINTIFF HAS FAILED TO SHOW THAT HIS INTEREST IN THE
SPEECH OUTWEIGHS THE STATE'S INTEREST IN PROMOTING
THE EFFICIENCY OF THE PUBLIC SERVICES

Having concluded that Yohn's speech touches upon matters of public concern, the

Court balances whether his "interest in making such statements outweighs the interest of

the State, as an employer, in promoting the efficiency of the public services it performs

through its employees." Pickering, 391 U.S. at 568, 88 S. Ct. 1731; Perry v. McGinnis,

209 F.3d 597, 604 (6th Cir. 2000). Relevant considerations include "whether the

statement impairs discipline by superiors or harmony among co-workers, has a

detrimental impact on close working relationships for which personal loyalty and

confidence are necessary, or impedes the performance of the speaker's duties or interferes

with the regular operation of the enterprise." Rankin v. McPherson, 483 U.S. 378, 388,

107 S. Ct. 2891 (1987); see also Williams v. Commonwealth of Ky., 24 F.3d 1526 (6th

Cir. 1994).

Yohn's interests are outweighed by the interests of the Defendants where the

pleadings clearly indicate that Yohn's emails had an adverse impact on the working

relationships within his department and the School of Dentistry. There is no factual

dispute as to the rising tension among faculty members during the relevant period of this

case, and Yohn's own pleadings and exhibits indicate that his emails regarding his

ongoing litigation against the university were setting off ever greater intra-school

antagonism. The Defendants' interests in maintaining an environment free from hostile

email exchanges is sufficient to outweigh Yohn's interest in sending repeated and

15

possibly defamatory emails to his colleagues.  Cf. Bonnell, 241 F.3d at 811 (holding that although professor had First Amendment right to use certain forms of challenged speech in his classroom, his interests were outweighed by the college's interest in avoiding a "hostile learning environment").

Because Yohn has failed to show that he was engaged in a constitutionally protected activity, the Court need not proceed to the remaining elements of his First Amendment retaliation claim.  Nevertheless, the Court notes that there is virtually no indication in the pleadings that Yohn's speech, even if it was constitutionally protected, were actually denied.  Taking Yohn's account of the August 17, 2005 meeting as true, nothing in Krebsbach's statements or subsequent administration actions suggest that Yohn was prevented from sending ongoing email messages to the faculty.  The Defendants have similarly provided ample evidence that the denial of an equity adjustment for Yohn's base salary was wholly unrelated to Yohn's emails and articles, even if such a denial could theoretically have had a chilling effect on a person of ordinary firmness.  Ultimately, without reaching these issues of fact as to the existence of actual adverse action, the Court finds that as a legal matter Yohn has failed to state a cognizable First Amendment claim for the foregoing reasons.

3.    PLAINTIFF'S FIRST AMENDMENT CLAIMS, AS THE PREDICATE RIGHTS FOR HIS DUE PROCESS CLAIMS, MUST FAIL UNDER THE FOREGOING ANALYSIS

Yohn invokes his First Amendment rights—both his right to free speech and his right to petition the government—as the predicate liberty interests violated in his due

16

process claims discussed below.  In his Complaint, Yohn claims that the Defendants' action or

inaction "deprived plaintiff of a neutral and impartial GRB . . . [to] *redress his grievances*," in

violation of the First Amendment.  (Compl. ¶¶ 51, 54, 61, 66) (emphasis added).  Elsewhere,

Yohn argues that he was deprived of a fair hearing and due process "to protect his First

Amendment *right to free speech*."  (Pl. Br. in Opp'n to Defs.' 12(b)(6) Mot. and/or Mot. for

Summ. J. 5.)  Under either theory, given the preceding analysis in this section, the Court

finds that these claims must also fail.

Having concluded that Yohn did not have a protected right to free speech in

sending repeated emails to faculty members, the Court now holds that his remaining

grievances brought before the GRB were limited to private employment issues, regarding

use of university email servers, salary, and antagonism with other faculty members.  See,

e.g., Valot, 107 F.3d at 1226 (holding that availability of unemployment compensation

was not a matter of public concern under the Petition Clause); cf. Gragg v. Somerset

Tech. College, 373 F.3d 763, 767 (6th Cir. 2004) (holding that requesting overtime pay

was not a matter of public concern under the Speech Clause).  As such, neither Yohn's

right to free speech, nor his right to petition the government meet the requirements of the

Connick test and his claims do not rise to the level of a "fundamental" right or liberty

interest that is accorded special constitutional protection.  See Valot, 107 F.3d at 1226.

C.   PLAINTIFF HAS FAILED TO MAKE OUT A LEGALLY COGNIZABLE DUE
     PROCESS CLAIM

Yohn claims that because the Defendants tainted the grievance proceeding by

17

appointing or failing to remove Kohn from the GRB panel, he was denied an opportunity

to be heard, "[t]he fundamental requisite of due process of law." Grannis v. Ordean, 234

U.S. 385, 394 (1914). This Court holds that Yohn has failed to demonstrate either a

violation of his procedural or substantive due process rights.

To determine whether Yohn has established that his procedural due process rights

have been violated, the Court engages in a two-step inquiry: first, whether a liberty or

property interest has been interfered with by the state, and second, whether the procedures

used to deprive Plaintiff of such interest were constitutionally sufficient. See Buchanan

v. Apfel, 249 F.3d 485, 488 (6th Cir. 2001); Jackson v. City of Columbus, 194 F.3d 737,

745 (6th Cir. 1999). Beyond a generalized "deprivation" of his First Amendment rights,

Yohn does not allege any specific liberty or property interest. Rather, he relies on case

law in which academics lost either employment or diplomas and subsequently challenged

the university procedures. See Crook v. Baker, 813 F.2d 88, 99 (6th Cir. 1987) (master's

candidate who lost his degree after allegations of fraud); Frumkin v. Board of Trustees, Kent

State, 626 F.2d 19 (6th Cir. 1980) (former tenured associate professor at state university who

was discharged when federal funding for program was curtailed). Such cases are wholly

inapposite where Yohn does not allege a remotely analogous deprivation.

Nevertheless, even if Yohn established that he was deprived of a liberty or

property interest in his right to use university email servers to communicate with faculty,

in an equity adjustment of his base salary, or in a particular form of grievance proceeding,

he has failed to allege, much less demonstrate, constitutionally deficient procedures in

18

such deprivation.  "The fundamental elements of procedural due process are notice and an opportunity to be heard."  <u>Yellow Freight Sys., Inc. v. Martin</u>, 954 F.2d 353, 357 (6th Cir. 1992) (citing <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).  The GRB proceeding unquestionably meets this standard: Yohn was permitted to present his case and challenge the case presented by Polverini before the panel.

Moreover, Yohn's allegations of Kohn's bias alone are insufficient to sustain a due process claim.  <u>See, e.g.</u>, <u>Crook v. Baker</u>, 813 F.2d 88, 99 (6th Cir. 1987) ("Even if the decision was made 'by persons whose impartiality has been impugned,' that is nothing more than a finding that their impartiality has been assailed. It is not a finding that these persons were not impartial.").  The assertion that Kohn received raises while both Krebsbach and Polverini held leadership positions at the school do not establish a deficient proceeding.  In fact, the School of Dentistry faculty appeal procedures mandate that two members of the GRB be chosen from among the faculty of the School of Dentistry.  Under Yohn's reasoning, virtually any possible professor that Polverini could have proposed on his slate of panel nominees would have been chosen from among the faculty members that worked under him and were thus potentially susceptible to a similar "bias."  Ultimately, the Court need not reach this factual issue, holding instead that the GRB fully followed the faculty appeal procedures and a constitutionally sufficient form of due process.

To state a claim of substantive due process, Plaintiff must allege and show that

19

Defendants deprived him with a "fundamental" right or liberty interest that is accorded

special constitutional protection. See Washington v. Glucksberg, 521 U.S. 702, 719-20,

117 S. Ct. 2258, 2267 (1997).[4]  Substantive due process "serves as a vehicle to limit

various aspects of potentially oppressive government action."  Howard v. Grinage, 82

F.3d 1343, 1349 (6th Cir. 1996).  "Government actions that burden the exercise of . . .

fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld

only when they are narrowly tailored to a compelling government interest." Seal v.

Morgan, 229 F.3d 567, 574 (6th Cir. 2000).  Because Yohn has failed to show that he

was deprived of such a right, the Defendants' actions are subjected to rational basis

review.  Seal, 229 F.3d at 575.  The Defendants have offered a rational basis for their

actions and thus, Yohn's substantive due process claim must also fail.

E.      THE DEFENDANTS ARE CLOAKED WITH QUALIFIED IMMUNITY

Finally, the Defendants, as university officials, assert a defense of qualified

immunity.  See Purisch v. Tenn. Tech. Univ., 76 F.3d 1414, 1423 (6th Cir. 1996) (holding

that state university officials who perform discretionary functions are entitled to qualified

immunity from civil damage suits arising out of the performance of their official duties

unless they violate "clearly established constitutional rights of which a reasonable person

would have known"); Gratz v. Bollinger, 122 F. Supp. 2d 811, 834 (E.D. Mich. 2000),

---

[4] A second category of substantive due process claims encompass "egregious, arbitrary abuse of government power that 'shocks the conscience.'" See Buchanan, 249 F. 3d at 491.  Yohn does not allege such a violation and the Court does not address it here.

20

*rev'd on other grounds*, 539 U.S. 244, 123 S. Ct. 2411 (2003).

The doctrine of qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982); see also Davis v. Scherer, 468 U.S. 183, 194 n.12, 104 S. Ct. 3012 (1984) (holding that Harlow applies with equal force to cases involving state officials). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. —, 129 S. Ct. 808, 815 (2009). Moreover, "[b]ecause qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)).

Recently, the Supreme Court ruled that federal courts were no longer bound to follow the "inflexible requirement" set out in Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001). Pearson, 129 S. Ct. at 813. Saucier outlined a two-step analysis for qualified immunity: first, whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and second, whether that right was clearly established. Saucier, 533 U.S. at 201. After evaluating the "considerable body of new experience . . . regarding the consequences of requiring adherence to this

21

inflexible procedure," the Supreme Court concluded that while the sequence may often be appropriate, "it should no longer be regarded as mandatory." Pearson, 129 S. Ct. at 817. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.[5]

As discussed in the above sections, even when viewing the facts in the light most favorable to the Plaintiff, the Court finds that no constitutional rights were violated. Therefore, no further inquiry is needed beyond this point. The Defendants are shielded by qualified immunity.

CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' February 28, 2008  for Summary Judgment **[Dkt. # 16]** is GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's  for Judgment on the Pleadings  **[Dkt.**

---

[5]   Justice Alito, delivering the Pearson opinion for a unanimous court, explained: "Our decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that [the lower federal] courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Pearson, 129 S. Ct. at 821. Pearson distinguishes cases where Saucier may still be beneficial—for instance, where "there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong"—from cases where embarking rigidly on the Saucier first prong analysis could either cloud constitutional precedent or impose an unwieldy academic exercise at a pleading stage where the factual basis for a plaintiff's claims may be poorly developed. Id. at 818-19.

**# 14]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's remaining  to Sanction Defendants'

Attorneys **[Dkt. # 42]** is DENIED.

Let judgment be entered accordingly.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 16, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 16, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager